ESTATE OF PHILIP R. THAYER, DECEASED, ANNA-MARY THAYER, ERNEST W. JACKSON, AND CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48059. Filed June 14, 1955.

*Clarence E. Musto, Esq.*, for the petitioners.
*Aaron S. Resnik, Esq.*, for the respondent.

388

TIETJENS, *Judge:* The sole question is whether the decedent's legacy to the California Alumni Association is a proper deduction from the gross estate under section 812 (d)[1] of the Internal Revenue Code of 1939. This in turn depends upon whether the Association is a corporation organized and operated exclusively for charitable or educational purposes. It is stipulated that none of the moneys acquired by the Association are used for the benefit of any alumnus and that no substantial part of its activities is carrying on propaganda, or otherwise attempting to influence legislation.

The stated purposes of the Association are "to advance the interests of the University of California and to promote the welfare of its alumni," and "to do any and all things necessary to accomplish the foregoing purposes." The Association carries on several activities which are obviously educational or charitable in nature such as the scholarship program, counseling with undergraduates concerning their careers, and special educational institutes. Notwithstanding such activities, if the Association has any substantial activity which is noneducational and noncharitable it will not be exclusively educational or charitable within the meaning of section 812 (d). See *Better Business Bureau* v. *United States*, 326 U. S. 279 (1945).

The respondent argues that since one of the purposes of the Association is "to promote the welfare of its alumni," one of its principal functions and objectives is to maintain a program of social and recreational activities, and that it has devoted its activities and efforts to be of service to its individual members. The respondent points to the following as being social and recreational activities carried on for the benefit of members: (a) The establishment of local clubs and the operation of social programs at their meetings; (b) sponsorship of class reunions, homecoming celebrations, rallies, dances, cocktail and other parties, as well as the sponsorship of tours and conferences; (c) the operation of a recreational camp; (d) the organization of special alumni recreational activities and events by the camp director during the spring and winter seasons; (e) operation of facilities for the pur-

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—
\* \* \* \* \* \*
(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers \* \* \* to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, \* \* \*

chase of tickets by members to athletic events; (f) the sponsorship and operation of institutes at which subjects of current and general interest are discussed; (g) the maintenance of an alumni house, designed for the comfort and convenience of alumni; (h) the expenditure of approximately $25,000 annually for meetings and banquets. In addition the respondent refers to the following other activities as being substantially social and recreational in nature: (a) The publication of a monthly periodical containing articles and other materials of general interest and entertainment to members, including sections therein of interesting activities and happenings of individual members of the Association; (b) a publication of a catalog of alumni; (c) the maintenance of a roster of personal contacts in states other than California and in foreign countries with whom members can meet on their travels; as for example, Paris, France; Shanghai, China; and Saudi Arabia where periodic meetings are held. These activities, says the respondent, are directed toward the welfare, interest, recreation, fellowship, and social activities of the members of the Association.

It is stipulated that all moneys acquired by the Association are used for the activities described in the stipulation and that all such activities are for the purpose of advancing the interests of the university and for its benefit, although it is agreed that this is not the sole or exclusive purpose of such activities. The activities, even though involving some social or recreational features, are for the ultimate benefit of an educational institution.

The crux of the issue is whether the social and recreational activities are "substantial" or merely incidental to the objective of advancing the interests of the university. See *Huntington National Bank*, 13 T. C. 760 (1949), acq. 1950–1 C. B. 3.

It seems clear that any social or recreational aspects of the Association's activities are merely incidental to its primary purpose of affording a medium through which the alumni can contribute to the welfare of the university. Entertainment features serve to stimulate interest in the Association and in such primary purpose. In I. T. 3330, 1939–2 C. B. 185, an organization which conducted study courses for the benefit of employees of local banks and published a nonprofitable professional magazine, and which had certain entertainment activities, was held exempt as an educational organization, the entertainment being for the purpose of creating and stimulating interest and being merely incidental to the primary purpose of education.

The local clubs are not under the control of the Association. The Association encourages their formation and serves them by sending faculty members at the Association's expense to speak at club meetings. While the clubs have some social features they also serve the purpose

of acquainting alumni with university problems and with faculty members who speak at club meetings. The primary activity of the clubs is to have speakers from the university deliver lectures on educational subjects. The club programs are related to the university. The expenditure of over $24,000 for meetings and banquets in the fiscal year ended June 30, 1950, includes the expenses of some 200 or 300 trips made by these speakers sent to address the local clubs.

The class reunions and homecoming celebrations are social events conducted by the classes or student groups, not by the Association, which merely furnishes assistance through listing the events in the monthly magazine. The president's tour of the State enables him to speak before alumni groups in different localities to maintain their interest in and support of the university. The special educational institutes are educational rather than social in their nature and are open to the general public. The alumni house, although its construction was financed by contributions from the alumni, is used by faculty, student groups, and administrative officers as well as by alumni, and title is in the regents. Its purpose is to make alumni efforts to serve the university more effective. See *Squire* v. *Students Book Corp.*, (C. A. 9, 1951) 191 F. 2d 1018.

One of the respondent's principal arguments concerns the summer camp sponsored by the Association. The respondent says this is a major activity of the organization, it is similar in operation to commercial camps in the same area, and its purpose is wholly recreational. The camp is operated for approximately 10 weeks each summer and about 1,200 to 1,500 alumni attend with their families. Attendance is not restricted to members of the Association, but almost all attending are members. At the camp some 20 to 25 professors from the university give lectures and lead discussion groups on educational subjects. The camp is operated on a nonprofit basis and is not a money-making enterprise. Even if the members who attend derive more recreation than education from the camp it reaches only a small part of the Association's membership, about 3 or 4 per cent, and as to those members, serves to attract their interest to the university and its problems. The Association's investment in camp facilities was about $28,000 out of net assets of over $1,500,000, or less than 2 per cent. This is not so substantial an activity as to characterize the Association as social rather than educational.

The respondent contends that the Association operates facilities for purchase of tickets by members to athletic events. This is not borne out by the evidence. The testimony shows that members have an opportunity along with students and faculty to purchase tickets from the university, not from the Association, and have no special privilege as to price or seat locations.

The Association has not published a list of the alumni since about 1937 nor does it maintain a directory of alumni.

The California Monthly contains educational articles, reports from the different campuses of the university, of the local alumni clubs, items about individual members, calendars of activities and notices of reunions planned by different graduating classes. The social matter contained is not predominant and much of that deals with activities of classes or local clubs rather than of the Association itself.

Although it appears that the camp director organizes special alumni events during the spring and winter seasons, there is nothing to indicate that these are in any way recreational, as contended by the respondent.

We think the facts shown with reference to the activities demonstrate that the promotion of the welfare of the alumni, referred to as a purpose of the Association in its articles of incorporation, means the welfare of the alumni collectively as a group which maintains a vital interest in the university, its problems, and its function as an educational institution.

The State court held, in a trial on the merits, that the Association was "organized solely for and exclusively engaged in and devoted to charitable, educational, public or other like work." While this decision, interpreting another statute and based upon a different record, is not controlling here, it lends some support to our ultimate similar finding.

We conclude that the Association is operated exclusively for educational and charitable purposes within the meaning of section 812 (d) of the Internal Revenue Code of 1939.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J*, dissenting: I am unable to read the facts recited in the report herein and justify the conclusion that the California Alumni Association was organized and is operated exclusively for educational or charitable purposes. The report seemingly acknowledges the fact that there were activities which do not qualify as being for the stated purposes but seeks to dismiss them from consideration by referring to them as incidental. First, it is my view that the facts do not indicate that they were incidental and not substantial, and second, I do not feel that we are at liberty to write qualifying words into a statute where Congress has not stated or indicated any permissible conditions or exceptions. I accordingly note my dissent.