**R. L. PHINNEY, District Director of Internal Revenue, Appellant,**

v.

**J. Chrys DOUGHERTY et ux., Appellees.**

**No. 19195.**

United States Court of Appeals Fifth Circuit.

Sept. 6, 1962.

Rehearing Denied Oct. 11, 1962.

358

Ernest Morgan, U. S. Atty., K. Key Hoffman, Asst. U. S. Atty., San Antonio, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Michael I. Smith, Loring W. Post, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., for appellants.

Harry C. Weeks, Fort Worth, Tex., Thomas Gibbs Gee, Austin, Tex., for appellees.

Before HUTCHESON, RIVES and BELL, Circuit Judges.

RIVES, Circuit Judge.

The question is whether the taxpayers' gift in 1957 to Texas Beta Students Aid Fund (hereafter Fund) was a gift to a corporation "organized and operated exclusively for * * * educational purposes" within the meaning of section 170 (c) (2) [1] [see also section 501(c) (3)] of the Internal Revenue Code of 1954, 26 U.S.C.A. § 170(c) (2), and hence deductible in computing their income tax liability for that year, all other requirements as to deductibility admittedly being present.

The Fund was incorporated as a non-profit corporation under the laws of Texas in 1947. Its purposes were expressed in its articles of incorporation as follows:

"This corporation is created for educational purposes.

* * * * *

"(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children. or animals."

1. "(c) *Charitable contribution defined.*— For purposes of this section, the term 'charitable contribution' means a contribution or gift to or for the use of—

* * * * *

"(2) A corporation, trust, or community chest, fund, or foundation—

"The specific educational purpose which this corporation is formed to achieve is that of aiding students of the University of Texas who are members of, or who are pledged to become members of, the Beta Omicron Chapter of the Beta Theta Pi Fraternity:

"(a) To achieve and maintain high scholastic standing;

"(b) To add to their general culture and knowledge, as well as to their ability and desire to cooperate with, and work in harmony with, their fellowmen in promoting those things of a civic, religious or educational nature which are for the general good of the University of Texas;

"(c) To maintain themselves while attending the University of Texas.

"This specific purpose may be accomplished:

"(a) By acquiring, improving and maintaining lands and buildings, the buildings to be suitable for housing the members and pledges of this Chapter, and to have assembly, library, lecture and study rooms and facilities suitable for their use and for the accomplishment of the aforesaid objectives; and by making those lands, buildings and facilities available to said Chapter, its members and pledges, with or without charges (as the directors of this corporation may from time to time determine) for so long as they maintain standards of scholarship above the average maintained by the student body at the University of Texas for the same period of time, (or such higher standards as the directors of this corporation may from time to time prescribe) and conduct themselves in conformity with the standards prescribed from time to time by the directors of this corporation, and for so long as each and every member or pledge, whose scholastic grades are at the time below those then required by the faculty of the University of Texas for participating in the activities of fraternities and clubs at said University, are denied the use of said lands, buildings and facilities;

"(b) By providing for the said Chapter, its members and pledges, lectures, instruction and supervision upon or with respect to cultural, educational, religious and civic subjects and matters;

"(c) By making loans or gifts to worthy or needy students to encourage them in their educational pursuits or to enable them to attend the University of Texas; and

"(d) By such other means and methods as the Directors of this corporation may from time to time determine to be appropriate for the accomplishment of the specific purpose for which this corporation is formed, and which are not contrary to the other terms and provisions hereof."

The Treasury Department issued a letter ruling, dated December 1, 1949, that the Fund was organized and operated exclusively for educational purposes, and therefore that donations to the Fund would be deductible for income tax purposes. On March 26, 1957, this ruling was changed in another letter ruling which reads in part as follows:

"Section 501(c) (3) requires that organizations claiming an educational exemption be both organized and operated exclusively for such purposes. The facts show that substantially all your funds have been used for the purpose of acquiring and maintaining a chapter house and leasing it to a local chapter of a fraternity. It is true that in a sense you have a connection with education but a substantial function is to aid a group of students combined in a social club. It has long been the position of the Service that college fraternities are not exempt educational organizations but are primarily social clubs. I.T. 1427, C.B.

I–2, p. 187; G.C.M. 5952, C.B. VIII–1, p. 172. Moreover, the courts have held that a fraternity 'is not per se within the statute.' Alfred T. Davison (1930) 21 B.T.A. 251, 253, affirmed (C.C.A.2nd 1932) 60 F.2d 50, and cases therein cited. The facts show that you are operated to provide most importantly social club facilities, as well as coincident boarding and lodging and connected educational facilities. Further, it is shown that since 1950 monthly rentals have been reduced $550.00, or approximately 66 percent, to bring them in line with the students' ability to pay and to assist them in resolving chapter problems. It is clear, therefore, that you are not leasing these facilities to the chapter purely as an investment to obtain funds for educational purposes and it must perforce be concluded that contributions used to acquire and maintain such facilities do not constitute an investment in actuality.

"Foundations can be organized for the purpose of promoting the education of the members of a local chapter of a fraternity. In order, however, to obtain exemption under section 501(c) (3), the purposes and activities must be educational within the contemplation of the statute and must be without any substantial noneducational purpose or activity. Thus a trust fund to provide scholarships or to build a library for a chapter house could receive exemption under section 501(c) (3). But where the predominant activity is the acquisition, improvement or maintenance of a chapter house, the other activities must be regarded as incidental. Davison v. Commissioner, supra.

"In view of the foregoing, it is held upon reconsideration that you are not entitled to exemption from Federal income tax as an organization described in section 501(c) (3) of the 1954 Code, inasmuch as it cannot be said that you are organized and operated exclusively for educational or any one or more of the other purposes specified in that section of law.

"After the date of this ruling, contributions made to you are not deductible by the donors in computing their taxable income under section 170 of the 1954 Code; bequests, legacies, devises or transfers to or for your use are not deductible in computing the taxable estate of a decedent for Federal estate tax purposes under sections 2055 and 2106 of the Code, and gifts of property to or for your use are not deductible in computing taxable gifts for Federal gift-tax purposes under section 2522 of the Code."

The present suit for refund was brought to test the correctness of this later ruling. In making that test the Treasury Regulations are helpful, and particularly the following parts of section 1.501(c) (3)–1, Treasury Regulations on Income Tax (1954 Code):

"(c) *Operational test*—(1) *Primary activities.* An organization will be regarded as 'operated exclusively' for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in Section 501(c) (3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose."

"(3) *Educational defined*—(i) *In general.* The term 'educational', as used in section 501(c) (3), relates to—

"(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

"(b) The instruction of the public on subjects useful to the individual and beneficial to the community. * * *"

From its incorporation to August 31, 1960, the Fund received donations ag-

gregating $357,909.74. Its gross income for this period was $68,078.34. Of these total receipts the Fund expended $320,006.59 for land, the fraternity house erected thereon and related improvements, as well as for furniture, fixtures and equipment. It spent on scholarships and tutoring $15,496.75, and had almost $25,000.00 in trust and scholarship funds.

The house was suitable for housing 54 students and feeding 60. It contained appropriate recreational and study quarters. For the first two years, beginning on September 1, 1949, the house was leased by the Fund to the fraternity at a monthly rental of $850.00. Each fraternity member's or pledge's use of the house was premised on his maintaining a scholastic average equal to the official all-university student average. In November 1951, the monthly rental was reduced to the sum of $300.00 per month. As of September 1955, the Fund increased the rental to $425.00 per month. On December 31, 1957, a new three-year lease was entered into by the Fund and the fraternity effective as of September 1 of that year. This lease provided for a rental of $850.00 per month for the first year of the leasehold and increments of $100.00 per month for each successive year.

■ The predominant activity of the Fund has been to provide and maintain the fraternity house. That house provided housing for college students, and was operated with a view to improving their scholastic attainments. If the housing had been provided by the University itself, it seems clear that it would have been an incident to its educational activities, and hence that a donation to the University earmarked to provide and maintain a dormitory would be a gift to a corporation "organized and operated exclusively for * * * educational purposes" within the meaning of section 170(c) (2), footnote 1, supra. Milton J. Smith, Jr., Executors v. Commissioners, 1933, 28 B. T.A. 422–427; Revenue Ruling 60–367,

C.B. 1960–2, p. 73 (March 26, 1957). On the other hand, it just as clearly appears from the rulings and authorities cited in the Treasury Department's ruling of March 26, 1957, heretofore quoted, that a donation to a fraternity earmarked to provide and maintain a fraternity house would not be a gift to a corporation "organized and operated exclusively for educational purposes," because college fraternities are primarily social clubs.

■ The Fund, as incorporated, organized and operated, has neither the educational activities of the University nor the social activities of the fraternity. Instead, its predominant activity is to provide and maintain the fraternity house. The fraternity house serves both the educational purposes of the University and the social purposes of the fraternity. In order, however, that the Fund be "organized and operated exclusively for * * * educational purposes," education must be its primary purpose or function and such of its activities as do not serve to further education must be so minor in comparison as to be termed incidental.

■ In our opinion the Fund does not meet that test. It is an understatement to say that its connection with the fraternity is as close as its connection with the University. Viewed realistically, it amounts to an elaborate scheme, skillfully devised for tax purposes, by which moneys primarily serving a fraternity can be earmarked for its more educational aspects. The purpose of serving the purely social purposes of the fraternity cannot be said to be minor and incidental to its broader educational purposes. We conclude that the Fund is not a corporation "organized and operated *exclusively* for * * * educational purposes" within the meaning of section 170(c) (2), footnote 1, supra. The judgment is therefore reversed with directions to enter judgment for the defendant.

Reversed with directions.