Malcolm L. Tinker and Teresa E. Tinker v. Commissioner.
Tinker v. Commissioner
Docket No. 726-65.
United States Tax Court
T.C. Memo 1966-162; 1966 Tax Ct. Memo LEXIS 123; 25 T.C.M. (CCH) 852; T.C.M. (RIA) 66162; July 7, 1966
*123 Held: (1) During the taxable years in issue petitioner Malcolm L. Tinker's employment in Pawtucket, Rhode Island, was indefinite, rather than temporary, in nature; therefore, the cost of his meals and lodging in Rhode Island is not deductible under section 162, I.R.C. 1954, as traveling expense incurred while away from home; (2) On the facts presented petitioners are not entitled to deduct expenses allegedly incurred by petitioner Teresa E. Tinker in connection with her duties as an officer in an organization known as Zonta International. Meyer Sugarman, 663 Main Ave., Passaic, N.J., for the petitioners. Alan M. Stark, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income taxes of petitioners and an addition to tax for the years and in the amounts as follows: Addition to Tax
Sec. 6651(a)
Year
Deficiency
I.R.C. 1954
1959
$2,099.83
$308.55
1960
1,000.57
1961
1,390.21
1962
253.46
*125 The only issues are (1) whether expenses for meals and lodging incurred by petitioner Malcolm L. Tinker while employed as a consulting engineer in Pawtucket, Rhode Island, were incurred "while away from home" within the meaning of section 162(a)(2) of the Internal Revenue Code of 1954, and (2) whether petitioners may deduct expenses allegedly incurred by petitioner Teresa E. Tinker in connection with her office as district governor of Zonta International as a charitable contribution. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners are husband and wife who reside in Cresskill, New Jersey. They filed their joint Federal income tax returns on a cash receipts and disbursements basis for the taxable years 1959, 1960, 1961, and 1962 with the district director of internal revenue at Newark, New Jersey. Their return for 1959 was untimely filed on February 10, 1961; their returns for the other years in issue were timely filed. Petitioner Malcolm L. Tinker (hereinafter referred to as Malcolm) is an engineer. Prior to July 1958 he had been instrumental *126 in the development of a process for manufacturing nonwoven fabrics. In approximately July 1958 Malcolm was engaged by the Union Wadding Company (hereinafter referred to as Union) to install a nonwoven fabric process in its plant at Pawtucket, Rhode Island. His engagement was for an indefinite period of time and in fact lasted until March 1962. When Malcolm accepted the engagement, he did not intend to go beyond the phase of installing equipment for a nonwoven fabric process. This operation generally takes five or six months. However, in analyzing their situation he determined that they could use their present equipment. This decision involved getting them into production right away at about 25 percent of capacity and gradually revamping their equipment to fit the nonwoven process. As time went on, they asked him to develop other materials for which they had requests and to revamp existing lines and increase productivity. He became involved in machine design, organizational problems, training personnel, and personnel problems. When he left Union in March 1962, they wanted him to stay. Malcolm originally undertook to spend approximately three days a week in Pawtucket, Rhode Island. *127 He was free to arrange his own time and in fact spent an average of approximately four days a week in Rhode Island, sometimes staying two weeks at a time. During the years in issue, Malcolm maintained a residence in New Jersey where his wife lived and where he had an office and a library. Sometime after he had accepted the engagement with Union, Malcolm moved his residence from Teaneck, New Jersey, to Cresskill, New Jersey. When not working for Union in Rhode Island, he returned to his home in New Jersey, where he worked in his library doing research in his field, including research necessary to the proper performance of his work for Union. The research materials needed in his work for Union were available in Rhode Island, albeit less conveniently than in his library at home. He worked approximately five days a week for Union during the years in issue. While engaged by Union, Malcolm received offers of employment from a number of major fiber and textile companies. During the years in issue he was employed by no company other than Union. Malcolm was originally paid by Union on a per diem basis at the rate of $100 per day. During the years in issue his compensation was based on a *128 hourly rate and he billed the company on a weekly basis. He was not necessarily paid on the same day as other Union employees. Union withheld Federal income and social security taxes from Malcolm's paycheck and he was included under the company's pension plan, from which he received $2,486.96 in discharge of his pension rights upon termination of his employment in March 1962. Malcolm received income from Union in 1959, 1960, 1961, and 1962, respectively, in the amounts of $15,030.48, $25,666.20, $15,000, and $2,500. His traveling expenses between New Jersey and Rhode Island were reimbursed. Malcolm incurred living expenses in Rhode Island consisting of meals and rent in the amounts of $2,690 in 1959, $2,575 in 1960, $2,755 in 1961, and $685.50 in 1962. Petitioners deducted these respective amounts on their joint Federal income tax returns for 1959, 1960, 1961 and 1962. In his statutory notice of deficiency dated November 13, 1964, respondent disallowed these amounts on the grounds that petitioner had failed to establish that they are entitled to the deductions. During the taxable years involved, Malcolm's employment by Union was of indefinite, rather than temporary, duration. *129 Petitioner Teresa E. Tinker (hereinafter referred to as Teresa) held the office of governor of District 3 in an organization known as Zonta International, a club for professional and business women, with headquarters in Chicago, Illinois. The Articles of Association of Zonta International provide in part: 2. The objects for which it is formed are: (1) To encourage high ethical standards in business and the professions; (2) To prove the legal, political, economic and professional status of women; (3) To encourage, promote and supervise the organization of Zonta Clubs throughout the world; (4) To increase the service and value of Zonta Clubs to their respective members and communities; (5) To promote the broad spirit of good fellowship among Zontians and among Zonta Clubs; (6) To work for the advancement of understanding, good will and peace through a world fellowship of executive women in business and profession, united in the Zonta ideal of service. The bylaws of Zonta International state, in part, its policy that: (1) it, its districts and its clubs shall be non-partisan and nonsectarian, and (2) that it, its districts and its clubs may express itself upon principles and public *130 questions having a bearing on its objects. The standard bylaws for local Zonta clubs, with minor exceptions, limit active membership in the club to but one member in each type of business or profession and provide for the creation of an Amelia Earhart Committee to promote the educational program of Zonta International on Amelia Earhart and her contributions to aviation; a fellowship committee to promote acquaintances and friendship among members; an inter-city committee to promote closer relationship and exchange of courtesies between nearby local clubs; an international relations committee to aid in maintaining contacts with foreign clubs and extending the work of Zonta International in other countries and devise and execute plans for participating in movements to improve international relations; a program committee to prepare programs for club meetings and social affairs; a public affairs committee to recommend action on matters affecting public welfare and devise and execute plans for the benefit and improvement of the community; a public relations committee to inform the public of the purposes and acts of the club; a safety committee to cooperate with civic officials and safety *131 councils in the promotion of safety in the home, on the highway and in other public and private places; a service committee to have charge of all philanthropic or community service activities of the club; a committee on the status of women to recommend action on conditions affecting the status of women and devise and execute plans for the improvement of their legal, political, economic and professional status; a Z Club committee to promote the organization of Z Clubs for girls in high schools and colleges; and certain administrative committees. The bylaws of Zonta International provide for committees corresponding generally to the local club's committees. On May 5, 1953, Zonta was granted an exemption from taxation under section 101 (9) of the Internal Revenue Code of 1939, the predecessor of section 501(c)(7) of the Internal Revenue Code of 1954, which exempts clubs organized and operated exclusively for plasure, recreation, and other nonprofitable purposes. The bylaws of Zonta International provide that the governor of a district shall be elected for a two-year term and shall not be eligible for two consecutive terms in the same office. The bylaws delineate *132 the duties of the district governor as follows: ARTICLE XIII DISTRICTS * * *
SECTION 9. Within the boundaries of each district, the District Governor shall further the objects of Zonta International, shall supervise the organization of new clubs and promote and strengthen friendly relations among clubs within the district, and between the district and Zonta International. At least sixty days before the conference she shall issue the Call for District Conference. She shall preside at district meetings and plan their programs, visit clubs within her district and attend the meetings of Zonta International. She shall supervise the preparation of the district budget and shall authorize expenses in accordance with this budget. She shall render monthly to the district treasurer an itemized account of expenses. She shall inform Headquarters of the dates of district meetings and shall file with the International President, Headquarters, and the District Lieutenant Governor copies of all district correspondence affecting Zonta International. The bylaws further provide that district governors shall be members of the board of directors of Zonta International and that expenses of members *133 in attending board meetings shall be paid by the treasurer on presentation of vouchers. During the years in issue, District 3 of Zonta International covered the east coast area from New York to Virginia. There were approximately 30 local Zonta clubs in the district. As district governor, Teresa's duties consisted of visiting these clubs, keeping in touch with them at all times, trying to build them up, working on their projects, and answering questions. Her work as district governor occupied practically all of her time. In connection with her work she incurred traveling expenses and expenses of mailing, telephoning, and typing. On their joint Federal income tax returns for the years 1959, 1960, 1961, and 1962, respectively, petitioners deducted as a charitable contribution the amounts of $1,783.74, $677.50, $2,074.65, and $1,935.68 allegedly representing expenses incurred by Teresa in connection with her duties as governor of District 3 of Zonta International. In his statutory notice of deficiency respondent disallowed these amounts on the grounds that petitioners had failed to establish that they are entitled to the deductions. Opinion The first issue is whether the expenses *134 incurred by Malcolm during the years involved for meals and lodging while working for Union in Rhode Island are deductible as ordinary and necessary business expenses under section 162 of the Internal Revenue Code of 1954. [1]
Section 162 allows a deduction for all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business, including the entire amount expended for meals and lodging while away from home. The petitioner's home for purposes of section 162 is his principal place of business or post of duty. *135 Robert A. Coerver, 36 T.C. 252, affd. per curiam 297 F. 2d 837 (C.A. 3); Harold R. Johnson, 17 T.C. 1261; Raymond E. Kershner, 14 T.C. 168; Mort L. Bixler, 5 B.T.A. 1181. Petitioners contend that Malcolm's employment by Union was temporary and that his living expenses in Rhode Island are deductible under the theory noted in Peurifoy v. Commissioner, 358 U.S. 59. Whether or not Malcolm's engagement with Union could have originally been termed temporary, the duration of his employment had become indefinite prior to the taxable years involved. Although he originally intended to install the nonwoven fabric process in toto prior to production, after analyzing Union's equipment Malcolm decided that the company should begin production immediately at less than full capacity by utilizing existing equipment which he gradually revamped to fit the nonwoven fabrics process. It was this gradual conversion of equipment and the concomitant progression toward full production which led to Malcolm's extended stay in Union's employ and his working on other jobs for them. His employment with Union was indeterminate in *136 duration not later than the time he decided to pursue this procedure and certainly before the expiration of the five or six-month period he thought the job required when he accepted employment in July 1958. The indefinite status of his employment is supported by the fact that he was covered by Union's pension plan. During the years in issue Malcolm worked for no employer other than Union. He worked approximately four days a week at Union's factory in Rhode Island. The fifth day he spent doing research in the library at his New Jersey residence. The research materials necessary to his work for Union were available in Rhode Island. In any case, Malcolm could have moved his residence to Rhode Island and the fact that he did not seems to have been the petitioners' personal choice. Malcolm's employment with Union was of indefinite duration and his principal post of duty, or tax home, was at the company's plant in Rhode Island. His expenditures for meals and rent in Rhode Island were therefore not incurred while traveling away from home and are not deductible under section 162. Doyle v. Commissioner, 354 F. 2d 480 (C.A. 9), affirming a Memorandum Opinion of this Court; *137 Arthur Sansone, 41 T.C. 277; Leo M. Verner, 39 T.C. 749; Leo C. Cockrell, 38 T.C. 470, affd. 321 F. 2d 504 (C.A. 8); Floyd Garlock, 34 T.C. 611. The second issue is whether petitioners may deduct the amounts allegedly spent by Teresa in the taxable years involved in connection with her duties as district governor of Zonta International as a charitable contribution. Section 170[2] allows a deduction for a charitable contribution defined in section 170(c) as a contribution to a corporation organized and operated exclusively for charitable, educational or other designated purposes. Section 1.170-2(a)(2) of the Income Tax Regulations provides that unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a charitable contribution. *138 Respondent contends that petitioners have failed to prove that the amounts in issue were contributed to such an organization or that these amounts were in fact expended and were unreimbursed. Zonta International's articles of association list as one of objectives the promotion of a broad spirit of good fellowship among its members and the standard committees of local Zonta clubs include committees to plan social affairs and to promote fellowship among its members and with other local and foreign clubs. Teresa testified that the local clubs often held social functions, such as card parties and dances, and that social affairs were held at the Zonta International biennial conventions. Eonta International's tax exempt status was granted under the 1939 Code provision (Sec. 101(9)) corresponding to section 501(c)(7) relating to clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes rather than the provision (Sec. 101(6)) corresponding to section 501(c)(3) relating to corporations organized and operated exclusively for charitable, etc., purposes. Although the stated objects of Zonta International and some of the committees established by its *139 bylaws suggest that it and its local clubs engaged in public service projects, the evidence does not support a finding that its social purpose was minor and incidental to its charitable purpose. Teresa's expenses are therefore not deductible under section 170 as a contribution to a corporation organized and operated exclusively for charitable, educational or other specified purposes. Phinney v. Dougherty, 307 F. 2d 357 (C.A. 5); Best Lock Corporation, 31 T.C. 1217; Estate of Philip R. Thayer, 24 T.C. 384; Henriette T. Noyes, 31 B.T.A. 121. Cf. Better Business Bureau v. United States, 326 U.S. 279. Moreover, petitioners have failed to substantiate their claim that the amounts deducted were actually expended. Teresa's testimony at the trial consisted simply of statements that she had incurred the expenses in the amounts claimed in connection with her duties as district governor, largely in traveling to visit Zonta clubs in her district and to attend directors' meetings and conferences. Although she testified that she kept records of her expenses, she did not produce them at the trial. She offered no evidence of *140 the number of clubs visited or board meetings attended and gave no indication of the character of conferences attended, nor is there any evidence as to the amounts of expenses which were reimbursed. The paucity of information provides no basis for determining what, if any, of the amounts claimed petitioners are entitled to deduct. Decision will be entered for the respondent. Footnotes
1. Except as otherwise indicated, all section references hereinafter will refer to the Internal Revenue Code of 1954. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and↩
2. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. * * *
(c) Charitable Contribution Defined. - For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of - * * *
(2) A corporation, trust, or community chest, fund, or foundation - (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.↩